STATE of Iowa, Plaintiff-Appellee,

v.

David Lee BROWN,
Defendant-Appellant.

No. 84–776.

Court of Appeals of Iowa.

Aug. 29, 1985.

Charles L. Harrington, Chief Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Ann E. Brenden, Asst. Atty. Gen., for plaintiff-appellee.

Considered by OXBERGER, C.J., and SNELL, and HAYDEN, JJ.

HAYDEN, Judge.

Defendant appeals from a conviction of assault causing bodily injury, as defined in Iowa Code sections 708.1 and 708.2(2) (1983). He asserts that the district court failed to explain to him and determine the nature of the charge to which he was pleading guilty, as required by Iowa Rule of Criminal Procedure 8(2)(b)(1).

Defendant David Lee Brown was charged by trial information with assault causing bodily injury. The minutes of testimony indicated that the victim would testify (1) that on July 19, 1983, defendant hit him on the head with what he believed to be a hammer, causing a 3½ inch laceration which required stitches, and (2) that when he was being treated at the hospital, he identified defendant from a photograph as the one who had hit him. The minutes also indicated that the police officer who investigated the assault would testify that the victim had identified defendant from a photo array. Defendant entered a guilty plea.

At the plea proceeding, the district court did not explain the offense charged to defendant and ask him whether he understood. Nor did the district court engage in a factual basis colloquy with defendant which related the facts of the case to the elements of the offense charged. Instead, the district court named the offense and then elicited defendant's admission that the minutes of testimony were "substantially correct." The district court then accepted defendant's guilty plea.

Brown waived the time for sentencing and his opportunity to file motion in arrest of judgment; the district court proceeded to sentence him. The defendant has appealed.

I. *Failure to File Motion in Arrest of Judgment.* Pursuant to Iowa Rules of Criminal Procedure 23(3)(a), "[a] defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude his or her right to assert such challenge on appeal." However, a defendant is not precluded from attacking the plea proceedings unless the court has personally informed the defendant "that he may file a motion in arrest of judgment *and* the consequences of failing to do so...." *State v. Worely,* 297 N.W.2d 368, 370 (Iowa 1980).

Although the defendant in this action waived his opportunity to file a motion in arrest of judgment, it is apparent from the record that the court did not explain the consequences. Thus, Brown's attack on his plea proceeding is not precluded by Iowa Rules of Criminal Procedure 23(3)(a). We therefore consider the issues raised by defendant.

II. *Explanation of the Nature of the Charge.* Brown's sole argument on appeal is that the trial court erred in failing to inform him of the elements of the offense and make certain he understood the nature of the offense as required by Iowa Rules of Criminal Procedure 8(2)(b)(1).

In guilty plea proceedings, lack of explanation of the elements of an offense is not reversible error if, under the circumstances, it is apparent that the accused understood the nature of the charge. *State v. Victor,* 310 N.W.2d 201, 204 (Iowa 1981). In fact, in some situations, the

name of the offense itself has been held to be sufficiently descriptive. *State v. Worely*, 297 N.W.2d 368, 371 (Iowa 1980).

In the present case, the trial court made the following inquiry when the guilty plea was accepted.

THE COURT: Having read over the Minutes of Testimony in both of these cases, David, with your attorney, now, I ask you to recall back to those two respective dates of April 10 and the other one in July—July 19, 1983, do you find any serious discrepancies with the facts that the State is telling the Court here on the Minutes?

THE DEFENDANT: No, sir.

THE COURT: They are substantially accurate?

THE DEFENDANT: Yes.

THE COURT: Do you want to add anything to either one of these matters at all?

THE DEFENDANT: No. I wish it wouldn't have happened.

■ Although the court did not advise Brown of the elements of the crime, the minutes of testimony described exactly how the crime was committed in simple, easily understood terms. We believe this was adequate to ensure that Brown was aware of the elements of assault and understood the nature of the crime. *See State v. Oberbreckling*, 235 N.W.2d 121, 122 (Iowa 1975) (explanation of crime of sodomy in minutes of testimony served to inform defendant of elements of crime).

Defendant, however, claims that the minutes of testimony do not establish that the alleged assault was intentional. He argues that assault causing bodily injury is a specific intent crime and the court failed to ascertain his understanding of this intent element.

Our case law indicates that when dealing with a specific intent crime it is generally necessary to document the defendants understanding of the specific intent element in order to accept the guilty plea. *State v. Worely*, 297 N.W.2d at 371; *State v. Fluhr*, 287 N.W.2d 857, 866 (Iowa 1980);

*but see State v. Reaves*, 254 N.W.2d 488, 494 (Iowa 1977); *Michels v. Brewer*, 211 N.W.2d 293, 296 (Iowa 1973) (understanding of the nature of the charge apparent under all circumstances despite the trial court's failure to specifically explain the intent element). Thus, in order to determine whether Brown's guilty plea is valid it is necessary to determine whether assault causing bodily injury is a specific intent crime.

The definition of assault causing bodily injury is set forth in Iowa Code section 708.2(2): "A person who commits an assault, as defined in section 708.1, without the intent to inflict a serious injury upon another, and who causes bodily injury or disabling mental illness, is guilty of a serious misdemeanor." Since there is no additional intent element set forth in this definition, it is apparent that our analysis turns on whether assault, as defined in section 708.1, contains a specific intent element.

Our decision is necessarily one of statutory interpretation. The intent of the legislature is controlling. *Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969). The court is to look at the object to be accomplished, the evils to be remedied or the purpose to be served, and then give a liberal construction to the law which will best effect its purpose. *Shidler v. All American Life and Financial Corporation*, 298 N.W.2d 318, 321 (Iowa 1980). All parts of the statute should be read together and we are not to give undue importance to a single or isolated part. *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530, 532 (Iowa 1981).

Section 708.1 defines assault as follows:

1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

In determining whether this provision contains a specific intent element several principles guide us. In *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976), the supreme court recognized the following distinction between specific and general intent:

> Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

In *Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981), the supreme court stated:

> "[T]he most common usage of "specific intent" is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." W. La Fave & A. Scott, Jr., *supra* § 28 at 202.
>
> When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence; the crime is deemed to be one of specific intent.

P. Johnson, *Criminal Law*, 329 (1975). However, it has also been recognized that the mere use of the word "intent" in a statute does not mean that it is a specific intent crime. K. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 301–02 (1979–80). "[T]he effect of the element requiring the requisite proscribed act to have been done intentionally is merely to state the obvious, *viz.* accidental or unintentional acts are not punishable under the Criminal Code irrespective of their results." *Id.; see, e.g.,* Iowa Code §§ 710.7 (False Imprisonment), 716.1 (Criminal Mischief), and 719.4 (Escape) (1985).

The application of these principles is quite clear in some contexts. For instance, going armed with intent as defined in Iowa Code section 708.8 requires 1) that the person be armed with a dangerous weapon and 2) that the person have the specific intent to use the weapon against another person. Likewise, assault with intent to inflict serious injury obviously has a specific intent element beyond the intent necessary to commit an assault. However, in analyzing the general assault provision, the distinction is not as clear; the difficulty stems from the fact that the intent element is not easily separated from the act necessary to commit an assault. Because of this, assault conceivably meets the definition of a specific intent as well as a general intent crime. In this respect, the California Supreme Court stated:

> It is true that in most cases specific intent has come to mean an intention to do a future act or achieve a particular result, and that assault is appropriately characterized as a specific intent crime under this definition. An assault, however, is equally well characterized as a general intent crime under the definition of general intent as an intent merely to do a violent act. Therefore, whatever reality the distinction between specific and general intent may have in other contexts, the difference is chimerical in the case of assault with a deadly weapon or simple assault.

*People v. Hood*, 1 Cal.3d 444, at 457–58, 82 Cal.Rptr. 618, at 626, 462 P.2d 370, at 378 (1969).

Our analysis of cases in other jurisdictions reveals varying conclusions. Where the statute contains no intent language, several courts have held that assault is a general intent crime. *See, e.g., State v. Rash*, 294 N.W.2d 416, 418 (S.D.1980); *State v. Hammond*, 571 S.W.2d 114, 116 (Missouri 1978); *People v. Hood*, 1 Cal.3d

at 458, 82 Cal.Rptr. at 627, 462 P.2d at 379. In *State v. Mann*, 361 A.2d 897, 902 (Maine 1976), the Supreme Court held that assault is a general intent crime even though the statute requires "an intention to do some violence." The court reasoned that "[t]he intent required to bring the actor's conduct within the scope of the assault statute is only the *general intent* to complete the act of an unlawful touching of the victim." In contrast, the Michigan Court of Appeals has held that assault is a specific intent crime. *People v. McMaster*, 105 Mich.App. 162, 171, 306 N.W.2d 434, 436–37 (1981).

▮ Although assault does not fit neatly into either the general intent or specific intent category, in analyzing the Iowa statute, we are inclined to conclude that it is a general intent crime. Three reasons lead us to this result.

First, we are persuaded by the holding of the Iowa Supreme Court in *State v. Redmon*, 244 N.W.2d 792 (Iowa 1976). In *Redmon*, the supreme court classified the common law predecessor to the assault statute as a general intent crime. *Id.* at 797. At that time, assault was declared to be a crime, but its elements were not enumerated in the Code. At common law, the definition was "an attempt or offer, with force or violence, to do a corporal hurt to another whether from malice or wantoness, with such circumstances as denote, at the time, *an intention to do it*, coupled with a present ability to carry such intention into effect." *Id.* (emphasis added). The *Redmon* court also noted the following definition: "the unpermitted and unlawful application of physical force to the person of another in a rude and insolvent manner or *with a desire to do physical harm.*" *Id.* (emphasis added).

We find it significant that both common law definitions of assault refer to an intent not unlike that referred to in the statutory definition of assault. While the statute is certainly more specific in this regard, we would be hard pressed to characterize it as a change in the law; rather, it would appear to be merely a codification of the common law intent element, which has been characterized as a general intent to injure. Absent some clear indication on the part of the legislature to change prior law, we are bound by the *Redmon* decision. See *Eggman v. Scurr*, 311 N.W.2d 77, 80 (Iowa 1981).

Secondly, we also believe the overall statutory scheme supports our conclusion that assault is a general intent crime. A specific intent element is added to simple assault in defining such crimes as assault with intent to inflict serious injury and willful injury. Iowa Code §§ 708.2(1), 708.4 (1985). The addition of this intent element converts a simple misdemeanor to an aggravated misdemeanor. Construction of the general assault provision as requiring a specific intent would result in the requirement of proving two specific intents for certain types of assault. We agree with the State that this is an implausible result.

Finally, there are compelling policy reasons for our position on this issue. According to Chief Justice Treynor of the Supreme Court of California, the distinction between specific and general intent crimes evolved as a judicial response to the problem of how to treat those who committed crimes while intoxicated. *People v. Hood*, 1 Cal.3d at 455, 82 Cal.Rptr. at 625, 462 P.2d at 377. The result has been to allow intoxication as a defense only for specific intent crimes. As the California Supreme Court recognized, there are strong reasons for not recognizing intoxication as a defense to assault:

> a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness. What he is not as capable as a sober man of doing is exercising judgment about the social consequences of his acts or controlling his impulses toward anti-social acts. He is more likely to act rashly and impulsively and to be susceptible to passion and anger. *It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner.* As the

court said in *Parker v. United States* (1966) 123 U.S.App.D.C. 343, 359 F.2d 1009, 1012–1013, [D.C.Cir.] "Whatever ambiguities there may be in distinguishing between specific and general intent to determine whether drunkeness constitutes a defense, an offense of this nature is not one which requires an intent that it is susceptible to negation through a showing of voluntary intoxication."

*Id.* at 458, 82 Cal.Rptr. at 627, 462 P.2d at 379 (emphasis added).

While the case before this court does not involve the issue of intoxication we cannot ignore the fact that our decision today will have an effect in this area.

Accordingly, for the aforementioned reasons, we conclude that assault as defined in section 708.1 is a general intent crime. The intent language in the statutory provision only refers to the general intent to injure or complete the unlawful act of touching.

Because of our disposition on this issue, it is apparent that the trial court did not need to document the defendant's understanding of any specific intent element in order to accept the guilty plea. Since the minutes of testimony were clear and the defendant indicated his understanding of them, we conclude that the guilty plea is valid and the conviction should be allowed to stand.

AFFIRMED.